IN THE UNITED STATES DISTRICT COURT
FOR SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE CRIMINAL COMPLAINT AGAINST JOSHUA MARCEL PUGH | MJ- 26-mj-89 |

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, William Elliott, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

I am making this affidavit in support of a criminal complaint for Joshua Marcel Pugh.

1.  I am a Task Force Officer for the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") assigned to the Mobile Field Division Southern District of Alabama. As such, I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516(1). I am also certified by the Alabama Police Officer Standards and Training Commission ("APOSTC") as a law enforcement officer as defined in Alabama 36-21-40 and as a part of my sworn duties is to investigate, apprehend, and assist in the prosecution for violations of Alabama Criminal Laws found in Title 13A among other violations not specified as a part of the Criminal Code of Alabama.

2.  I have been a Task Force Officer with the ATF since December of 2025. I am currently employed by the Mobile Police Department as a detective in the Tactical Intelligence Unit and have been employed in that capacity since October of 2025. I have been employed by the Mobile Police Department since 2021. During the initial two years of my tenure, I was assigned

to the 3rd Precinct, an area historically recognized for significant illegal drug activity and the distribution of controlled substances. I subsequently served approximately one year in the Crime Detail Unit, where my responsibilities included proactively targeting high-crime and drug-infested areas. This assignment resulted in numerous drug-related arrests. In December 2023, I transferred to the Gang Intelligence Unit within the City of Mobile. This proactive Street Crimes Unit focused on suppressing gang-related crime, and during my time there, I made numerous arrests involving narcotics and firearms. After serving nearly two years in the Gang Unit, I transitioned to the Mobile Police Department's Tactical Intelligence Unit in October 2025. My professional development includes specialized training in street-level narcotics enforcement. In May 2024, I attended a Street Crimes Training course in Orlando, Florida, which emphasized identifying high-crime areas, drug trafficking patterns, and dismantling drug organizations. In August 2025, I completed training at the National Gang Crime Research Center in Chicago, Illinois, earning certifications in Gang Homicide Investigations, Gangs Involving Guns and Drugs, and Basic Gang Training. I am familiar with methods employed by narcotics traffickers, distributors, smugglers, and users. My duties and responsibilities as a Task Force Officer include conducting criminal investigations of individuals and entities for possible violations of Federal laws, particularly those laws found in Title 18 and Title 21 of the United States Code. I also have a duty and responsibility to conduct investigations into violations of the Criminal Code of Alabama.

    3.    The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and warrant and does not set forth all my knowledge about this matter.

4. Based on the facts set forth in this affidavit, there is probable cause to believe that a violation of 18 U.S.C § 922(o)(1), *Illegal Possession of a Machinegun*, has been committed by Joshua Marcel PUGH. ("PUGH") in the Southern District of Alabama.

## FACTS ESTABLISHING PROBABLE CAUSE

1. The ATF and other federal, state, and local agencies have been investigating the recent acquisition, possession, and use of Machinegun Conversion Devices ("MCD") in the Mobile area. Based on my training and experience, I know that 18 U.S.C. § 922(o) makes it a federal crime for "any person to transfer or possess a machinegun." 26 U.S.C. § 5845(b) of the National Firearms Act defines a machinegun as "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or a combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person." Under this definition, a Glock "switch" is a part which converts a semi-automatic pistol into a fully automatic firearm and is thus a machinegun as defined by federal law.

2. On February 17, 2026, at approximately 1800 hours, MPD Officer Castillo was patrolling on foot in downtown Mobile as part of increased law enforcement presence during Mardis Gras parades and festivities. Officer Castillo was with approximately eight other officers near the area of 158 North Broad Street, in downtown Mobile, Alabama. This location is a "76" gas station at the intersection of Springhill Avenue and Broad Street. During the last few Mardi Gras seasons, there have been shootings in this parking lot. This year, days before this incident, multiple videos surfaced on social media of males pulling out firearms on each other. Additionally,

multiple videos were observed of fights occurring in this parking lot this Mardi Gras season. While working Mardi Gras and surveilling the downtown area with other MPD officers, Officer Castillo observed PUGH, who was in close proximity to him, seemingly make eye contact with him. What was noteworthy to Officer Castillo and other officers, was that at the sight of law enforcement, PUGH abruptly changed his direction of travel and bladed his body away from Officers. Officer Castillo continued to observe PUGH, and saw PUGH walk out of the way and around a crowd of individuals. Based on Officer Castillo's training and experience, Officer Castillo believed PUGH was attempting to avoid law enforcement. Officer Castillo continued in the direction of PUGH, planning to attempt a consensual conversation. As Officer Castillo approached PUGH, he observed PUGH begin to reach towards his waist band. Believing he may be armed, Officer Castillo approached, attempting to initiate a Terry Pat on PUGH. Castillo grabbed PUGH's arm to remove it from his waistband, but PUGH pulled away and took off running. In response, Officer Castillo chased after PUGH telling him to stop running. PUGH was apprehended, yet actively resisted Officer Castillo putting him in handcuffs to detain him for attempting to elude. With assistance from other officers, PUGH was ultimately detained. During this time, PUGH made a spontaneous statement stating, "The 'button' is in my book bag." Affiant knows from training and experience that the term "button" is street slang for a machine gun conversion device.

    3.    Officer Castillo walked PUGH to his marked Police vehicle. PUGH was searched incident to arrest, and Officer Castillo observed a Glock with an extended magazine inserted inside of the book bag. Officer Castillo observed what appeared to be an MCD affixed to the back of the firearm.

4. Shortly after PUGH was detained, I received a call out in reference to Officer Castillo recovering a possible MCD affixed on the back of a Glock, commonly referred to as a "Glock switch." PUGH was transported to the MPD's office at the Gulf Coast Technology Center.

5. I responded to my office and met Officer Castillo. We placed PUGH in an audio and video recorded interview room. I examined the Glock in question, a model 23 gen 5, .40 caliber pistol, serial number BVLE116, with a 22 round magazine inserted. Affixed on the back of the Glock, where the back plate should be, I observed what I know to be, from my training and experience, a machine gun conversion. The MCD that was affixed on the back of the Glock's slide appeared to be installed correctly. See photos below of the MCD:



6. ATF Firearms Enforcement Officer John Miller, who commonly examines MCDs and has been qualified as an expert in federal court on MCDs, confirmed the MCD affixed to the firearm possessed by PUGH is considered a machinegun in and of itself.

7. PUGH waived his *Miranda Rights* and agreed to an interview. PUGH stated the firearm in his book bag was his and was able to tell me the model and caliber of the Glock (model

23 and .40 caliber). PUGH stated that he brought the Glock and MCD to the Mardi Gras Parade for protection.

8. PUGH stated that he attached all three pieces of the MCD onto the back of the Glock himself. PUGH stated that he has previously installed multiple MCD on Glocks. PUGH acknowledged that he knew what happens to a Glock whenever a MCD is affixed on the back.

9. PUGH admitted he told the Officers that he had a "button" in his book bag.

## CONCLUSION

Accordingly, your affiant respectfully requests that upon a finding of probable cause the Court issue a criminal complaint and accompanying arrest warrant for PUGH for violation of 18 U.S.C § 922(o)(1), *Illegal Possession of a Machinegun.*

Respectfully submitted,

_____
William D. Elliott
Task Force Officer
Bureau of Alcohol, Tobacco, Firearms and Explosives

THE ABOVE AGENT HAS ATTESTED
TO THIS AFFIDAVIT PURSUANT TO
FED. R. CRIM. P. 4.1(b)(2)(B)
THIS __10th__ DAY OF MARCH 2026

P. Bradley Murray
Digitally signed by P. Bradley Murray
Date: 2026.03.10 15:05:47 -05'00'
_____
P. BRADLEY MURRAY
UNITED STATES MAGISTRATE JUDGE